UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

COURTNEY D.[1],

          Plaintiff,

-v-

ANDREW SAUL,
Commissioner of Social Security,[2]

          Defendant.

19-CV-00777-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 17)

Plaintiff Courtney D. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her Social Security Disability ("SSD") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, plaintiff's motion (Dkt. No. 13) is denied and the Commissioner's motion (Dkt. No. 15) is granted.

---

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, this Decision and Order will identify plaintiff using only her first name and last initial in order to better protect personal and medical information of non-governmental parties.

[2] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

## BACKGROUND[3]

Plaintiff filed applications for SSD and SSI on December 8, 2015, alleging disability since June 1, 2013 due to Hailey-Hailey Disease, Lyme Disease, vision problems, arthritis, and constant pain. (*See* Tr. 239-53, 275)[4] Plaintiff's disability benefits application was initially denied on March 9, 2016. (Tr. 164-69) Plaintiff timely filed a written request for a hearing on September 10, 2015. (Tr. 170-73) A hearing was held before Administrative Law Judge William Manico ("the ALJ") on April 6, 2018. (Tr. 45-106) Plaintiff, who was represented by counsel, testified at the hearing. (*Id.*) The ALJ also received testimony from Vocational Expert Ronald Malik ("the VE"). (*Id.*) On May 16, 2018, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 11-44) Plaintiff timely filed a request for review of the ALJ's decision with the Appeals Council. (Tr. 232-34) After filing the appeal, plaintiff submitted new evidence to the Appeals Council consisting of two additional medical source statements. (Tr. 866-77) The Appeals Council denied plaintiff's request for review of the ALJ's determination on April 23, 2019 and this action followed. (Tr. 1-6)

Born on January 6, 1980, plaintiff was 33 years old on her alleged onset date and 38 years old on the date of her disability hearing. (Tr. 245) She earned her GED and attended one year of college in 1999. (Tr. 274-76) She has worked in the past as a bartender and server. (*Id.*)

---

[3] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.
[4] References to "Tr." are to the administrative record in this case.

2

## **DISCUSSION**

I. <u>Scope of Judicial Review</u>

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as

described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II. <u>Standards for Determining "Disability" Under the Act</u>

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that

work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the

claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.   *The ALJ's Decision*

The ALJ first found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. (Tr. 16) The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset date of June 1, 2013. (Tr. 16) At step two, the ALJ found that plaintiff has the following severe

impairments: dermatitis unspecified/pruritis unspecified/epidermolysis bullosa simplex[5]; mitochondrial myopathy; cervical disc disease; lumbago; headaches (but with normal brain MRI); obesity; affective disorder; anxiety disorder; and history of seizures.[6] (*Id.*) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 19-20) Before proceeding to step four, the ALJ found that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) but with the following exceptions: [t]he claimant may only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; [t]he claimant may never climb ladders, ropes or scaffolds; [t]he claimant should avoid exposure to hazards as well as jobs that involve driving on the job; [t]he claimant retains the mental residual functional capacity to perform unskilled work which allows her a regular work break approximately every two hours, and that does not involve performing fast-paced assembly work.

(Tr. 21-35) Proceeding to step four, the ALJ found that plaintiff has no past relevant work. (Tr. 35) At step five, the ALJ considered plaintiff's age, education, work experience, and RFC, together with the testimony of the VE, and concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as router, marker, and gluer. (Tr. 36-37) The ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, from June 1, 2013 through the date of the decision. (Tr. 37)

---

[5] As noted by the ALJ, plaintiff's main complaint as to the source of her disability is "Hailey-Hailey Disease" (Tr. 16) Hailey-Hailey Disease is a rare skin condition characterized by red, raw and blistered areas of skin that occur most often in skin folds such as the groin, armpits, neck, and under the breast. *See* https://medlineplus.gov/genetics/condition/hailey-hailey-disease/. The ALJ indicates that Hailey-Hailey Disease was not specifically diagnosed by plaintiff's dermatologist. (Tr. 16) The dermatologist instead noted that plaintiff's symptoms were "consistent with Hailey-Hailey Disease." (*Id.*) For this reason, the ALJ did not describe plaintiff's dermatological condition as "Hailey-Hailey Disease" but instead as "unspecified/pruritis unspecified/epidermolysis bullosa simplex as per her dermatologist." (*Id.*)

[6] Also at step two, the ALJ found that plaintiff suffered from the non-severe impairments of vision issues, Lyme Disease, obstructive sleep apnea, chest pain and arthritis. (Tr. 17)

IV.     *Plaintiff's Challenges*

Plaintiff argues that the ALJ erred at step three of the five step analysis by failing to properly consider whether her skin condition satisfied Medical Listing §8.03 (Bullous Disease). (*See* Dkt. No. 13 (Plaintiff's Memo. of Law)) For the following reasons, the Court disagrees.

As explained previously, step three of the sequential process requires the ALJ to consider whether a claimant's impairments meet or equal in severity any of the medical listings set forth in 20 C.F.R. §404. If a claimant's impairments meet or equal the specific requirements of a medical listing, the claimant is considered disabled *per se*. *See* 20 C.F.R. §404.1520(a)(4)(iii). The severity standard for listed impairments is high, and requires a level of severity "that would prevent an adult, regardless of h[er] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis added). In order for a claimant's impairment to meet a medical listing, the impairment must satisfy all specified medical criteria for at least twelve months. *Id.* at 529-30 ("An impairment that manifests only some of the [specified] criteria [of a listing], no matter how severely, does not qualify.") The claimant bears the burden to prove that her impairment meets or equals a listed impairment. *See Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (WDNY 2006).

Here, plaintiff contends that she met the criteria of Medical Listing §8.03 (Bullous Disease). Medical Listing §8.03 defines Bullous Disease as skin conditions such as "pemphigus.... with extensive skin lesions that persist for at least three months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. B, App. 1, § 8.03. Plaintiff argues that consultative examiner Dr. Samuel Balderman diagnosed her skin condition

8

as "chronic benign pemphigus" and that other medical evidence in the record shows that she had extensive skin lesions that persisted for at least three months despite continuing treatment. (Tr. 538, 645-46, 766-68, 833)

Contrary to plaintiff's assertions, the Court finds that the ALJ adequately considered whether plaintiff met Medical Listing §8.03 (Bullous Disease), and that substantial evidence supports his finding that plaintiff did not meet this listing. In his step three analysis, the ALJ expressly stated that a review of the medical evidence "in its entirety" demonstrated that none of plaintiff's impairments met or equaled the level of severity set forth in any of the listed impairments. (Tr. 19) He noted that no treating or examining physician indicated findings that would satisfy the severity requirements of any of the listed impairments. (*Id.*) The ALJ also noted that the state agency consultants found that plaintiff's symptoms did not meet any of the medical listings, and that plaintiff specifically did not meet the criteria for either Medical Listing §8.03 (Bullous Disease) or §8.05 (Dermatitis). (*Id.*)

Moreover, while plaintiff is correct that the ALJ did not discuss Medical Listing §8.03 in great detail in his step three analysis, this Court is permitted to consider the other portions of the ALJ's decision which further support his determination that plaintiff did not satisfy this listing. *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. March 25, 2010); *see also Barry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (when an ALJ fails to provide a detailed explanation as to why a claimant failed to meet or equal a medical listing at step three, the court may "look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence.") In his RFC analysis, the ALJ explained that when plaintiff met with

9

thoracic surgeon Dr. Balderman on February 22, 2016 for a consultative examination, she complained of a rash under her armpits and on her breasts but stated that topical steroids helped to minimize it. (Tr. 23, 32, 506-09) The ALJ also noted that while Dr. Balderman diagnosed plaintiff with chronic benign pemphigus, he reported that plaintiff had only mildly inflamed lesions under her armpits as well as her interior chest wall and that her condition was stable. (*Id.*) The ALJ placed great weight on Dr. Balderman's conclusion that plaintiff had only mild limitations to sustained physical activity as a result of chronic skin pain. (*Id.*) In determining that the evidence failed to support plaintiff's allegations of severe impairment, the ALJ emphasized that medical records showed that plaintiff has a history of medical noncompliance regarding her treatment and medication regime. (Tr. 30) The ALJ also reasoned that while plaintiff stated that she has had the skin condition since birth, it did not preclude her from working for a number of years. (Tr. 31)

Furthermore, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other clearly credible evidence demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (SDNY 2014); *see also Campbell v. Comm'r of Soc. Sec.*, 1:19-CV-03215, 2020 U.S. Dist. LEXIS 173789 (SDNY Sept. 22, 2020) (any error by the ALJ in failing to offer "meaningful analysis" at step three was harmless in light of credible evidence that plaintiff could not meet the required criteria.) Here, the ALJ's conclusion that plaintiff did not meet Medical Listing §8.03 is supported by credible record evidence that plaintiff did not suffer from extensive skin lesions that persisted for at least three months despite continuing treatment.

According to the Commissioner's regulations, "[e]xtensive skin lesions" are those that "involve multiple sites or critical body areas" and "result in a very serious limitation," including "skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity...skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements...and skin lesions on the soles of both feet, the perineum, or inguinal areas that very seriously limit your ability to ambulate." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.03. The medical records indeed reflect that plaintiff suffered from a skin condition which would occasionally produce painful rashes in certain areas of her body. (Tr. 538, 645-46, 766-68, 833) However, plaintiff's treatment records demonstrate that the condition was not extreme or severe enough to continuously prevent plaintiff from using more than one extremity, ambulating, or engaging in fine or gross motor movements, as required by the listings. In fact, plaintiff's treatment providers repeatedly opined, throughout the relevant period, that plaintiff was able to walk normally and that she possessed normal motor function and normal range of motion throughout her body. (Tr. 463, 484, 556, 559, 563, 569, 573, 624, 630, 675, 686, 688, 747, 773, 777, 838). Medical evidence also reflects that even when plaintiff was experiencing a flare-up of her skin condition, her symptoms were often mild and only present in one extremity. In November 2015, treating physician Dr. Patel did not observe any rashes in plaintiff's underarms or groin. (Tr. 484) In February 2016, Dr. Balderman found that plaintiff had "mildly inflamed" lesions that caused only "mild limitations" in sustained physical activity. (Tr. 508) In January and March of 2017, plaintiff exhibited normal fine motor abilities in her dominant, right hand and only "slightly slowed" fine motor abilities in her left hand. (Tr. 688) In October 2017 and January 2018, plaintiff

had lesions under her right arm but only "reddened discoloration" under her left arm. (Tr. 773, 777) Another treating physician opined that plaintiff did not need a cane or assistive device to walk, and that she had no limitations in reaching, grasping, or turning and manipulating objects with her hands or arms. (Tr. 864) Moreover, evidence in the record reflects that plaintiff's flare-ups did not persist for three months or more despite continuing treatment. Plaintiff experienced a flare of symptoms in her underarm and groin in July and August of 2016, and requested a "buggy" to "get around town". (Tr. 618, 650, 654-55) However, her treating doctor and nurse practitioner observed that she was able to ambulate without assistance and refused to prescribe one. (Tr. 569, 618) During an examination one month later, on September 29, 2016, plaintiff was walking normally and had normal motor function. (Tr. 566) Plaintiff reported another flare at the end of October 2016, but was walking normally in December 2016 and January 2017. (Tr. 563, 644-45, 721-22) Plaintiff experienced rash symptoms in her underarms and groin in December of 2017. (Tr. 843-44) However, the following month she was able to walk normally and reported that her symptoms improved with medical marijuana. (Tr. 772-74) In addition, plaintiff's treating dermatologist noted that plaintiff's lesions would improve if she properly used steroid medication for one to two weeks and plaintiff acknowledged that the steroid cream "sometimes" resolved her lesions. (Tr. 456, 834, 844) However, multiple physicians reported that plaintiff's lesions were exacerbated by body moisture, her refusal to wear antiperspirant even though it was recommended, and her refusal to comply with the prescribed steroid medication regime because she "did not like it." (Tr. 450, 452, 469, 471, 650-51, 655, 839, 844); See 20 C.F.R. §§ 404.1530, 416. 930 ("you must follow treatment prescribed by your medical source(s)"). For all of these reasons, the Court finds

that substantial evidence supports the ALJ's finding that plaintiff's skin condition did not meet the requirements of Medical Listing §8.03 (Bullous Disease).

Plaintiff next argues that the ALJ erred by failing to properly weigh the opinion of treating physician Dr. Julian Ambrus. (*See* Dkt. No. 13 (Plaintiff's Memo. of Law)) For the following reasons, the Court finds that the ALJ complied with the requirements of the treating physician rule.

On March 2, 2018, Dr. Ambrus completed a Medical Source Statement addressing plaintiff's functional capacity. (Tr. 862-65) He opined that plaintiff was incapable of walking one block and that she could only stand, walk or sit for less than two hours in an eight-hour workday. (*Id.*) He indicated that plaintiff would have to take unscheduled breaks throughout the day; that she could never lift or carry in a competitive work situation; and that she could rarely perform postural activities. (*Id.*) Dr. Ambrus also opined that plaintiff would be off-task more than 25% of the workday and that she was incapable of performing even low stress work. (*Id.*)

The treating physician rule "generally requires deference to the medical opinions of a [plaintiff's] treating physician[.]". *Hallorn v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); 20 C.F.R. §404.1527(c)(2) (The opinion of a treating physician is to be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record[.]"). To that end, the Social Security Regulations require the Commissioner to "always give good reasons" for the weight given to a treating source opinion. *Halloran*, 362 F.3d at 32; *quoting* 20 C.F.R. §404.1527(c)(2). Indeed, the reasons must be specific and supported by evidence in the record. *Marth v. Colvin*, 6:15-cv-0643, 2016 WL 3514126, *6 (W.D.N.Y.

June 28, 2016); *accord Blake v. Commissioner of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). When controlling weight is not given to the opinion of a treating physician, the ALJ must consider the following factors to determine how much weight to give the opinion of a treating source: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." 20 C.F.R. §404.1527(c)(2). "When other substantial evidence in the record conflicts with the treating physician's opinion...that opinion will not be deemed controlling...[a]nd the less consistent that opinion is with the record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *accord* 20 C.F.R. §404.1527(c)(4).

Here, the ALJ complied with the treating physician rule by providing good reasons for affording little weight to Dr. Ambrus' opinion. The ALJ noted that Dr. Ambrus treated or met with plaintiff only four times before completing the Medical Source Statement. (Tr. 34) The ALJ also noted that plaintiff testified that, unlike her other treating sources, Dr. Ambrus did not interview her regarding her physical or mental capabilities before completing the Medical Source Statement. (*Id.*) The ALJ found it doubtful that Dr. Ambrus could accurately assign such specific and detailed restrictions after only treating plaintiff on a handful of occasions and without questioning plaintiff as to her ability to perform the various functions listed on the Medical Source Statement, such as the period of time she was able to sit or stand over the course of an entire day or her ability to perform low stress work. (*Id.*) The ALJ also accurately concluded that the significant limitations and

14

restrictions contained in the Medical Source Statement were inconsistent with the majority of other evidence in the record, including Dr. Ambrus' own treatment notes. (*Id.*) For example, Dr. Ambrus noted that plaintiff had exercise intolerance due to "skin rashes where she sweats too much", but he observed no significant musculoskeletal or neurological defects. (Tr. 805, 807, 809, 811, 813) Further, during a February 2018 evaluation, Dr. Ambrus noted that plaintiff's insight and judgment were normal, and that her musculoskeletal, pulmonary and cardiovascular systems were all normal. (Tr. 34, 805-06) While Dr. Ambrus opined that plaintiff could never lift any amount of weight and could only rarely crouch or kneel, plaintiff testified at the hearing that she had the ability to crouch, twist, and lift ten to fifteen pounds. (Tr. 53-56, 71) Likewise, while Dr. Ambrus opined that plaintiff could not sit or stand for more than two hours over an eight-hour period, plaintiff testified that she spent most of her waking hours sitting and that she worked two days a week during the relevant time period at a bartending job that required her to stand and pour beverages. (Tr. 53-55, 65-67, 506) Dr. Ambrus' assessment of plaintiff's physical capabilities was also inconsistent with the many treatment providers who determined, throughout the relevant time period, that plaintiff was able to walk normally and that she possessed normal motor function and normal range of motion throughout her body. (Tr, 463, 484, 556, 559, 563, 569, 573, 624, 630, 675, 686, 688, 747, 773, 777, 838) For these reasons, the Court finds that the ALJ's rationale for assigning little weight to Dr. Ambrus' opinion was sound and that the ALJ did not violate the treating physician rule. *See Micheli v. Astrue*, 501 F. App'x 26, 28-29 (2d Cir. 2012) (holding that it was not error for the ALJ to decline to afford controlling weight to a treating physician when the opinion was internally inconsistent as well as inconsistent with other

substantial evidence in the record); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (summary order) (upholding the ALJ's decision to reject treating physician's opinion where the opinion was contrary to the physician's own treatment notes); *Carvey v. Astrue*, 380 F. App'x 50, 52 (2d Cir. 2010) (ALJ properly discounted opinion of treating physician where opinion was inconsistent with other medical opinions and claimant's own testimony).

Lastly, plaintiff argues that the Commissioner erred when the Appeals Council failed to properly evaluate new and material evidence. (*See* Dkt. No. 13 (Plaintiff's Memo. of Law)) The Court disagrees, and finds that the actions of the Appeals Council are not a basis for remand.

New evidence is only relevant if it is material and "relates to the period on or before the date of the administrative law judge hearing decision." *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). In order to be considered material, the new evidence must be: (1) relevant to the claimant's condition during the time period for which benefits are denied; (2) probative; and (3) reasonably likely to have influenced the ALJ to decide the claimant's application differently. *See Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). The relevant inquiry is whether the new evidence "add[s] so much as to make the ALJ's decision contrary to the weight of the evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010).

Plaintiff submitted, to the Appeals Council, a medical opinion letter from Dr. Vijay Aswani dated August 21, 2018. (Tr. 866-67) The Appeals Council refused to consider Dr. Aswani's opinion because it did not relate to the time period prior to May 16, 2018, the date of the ALJ's decision. (Tr. 2) In fact, Dr. Aswani's letter describes test results from

August of 2018, three months after the end of the relevant time period. Thus, the Court finds that the Appeals Council properly rejected Dr. Aswani's opinion because it related to testing and/or treatment outside of the relevant period. (Tr. 866-67) Moreover, even if Dr. Aswani's opinion did pertain to plaintiff's condition during the relevant time period, the opinion is still immaterial because it is unlikely that consideration of the opinion would have changed the outcome of the ALJ's determination that plaintiff was not disabled under the Act. Dr. Aswani's August 2018 letter states that plaintiff suffers from a genetic disorder called "compound heterozygous hemachromatosis." (*Id.*) Dr. Aswani generally opines that plaintiff's hemachromatosis, like plaintiff's other medical conditions, will require a "lifetime need for management and treatment." However, Dr. Aswani makes no findings that this disorder caused any additional symptoms, impairments or limitations which were present during the relevant time period and which the ALJ was previously unaware of. In fact, Dr. Aswani cites to no specific physical or mental health problems caused by this disorder. Thus, there is no basis to conclude that had the ALJ been presented with Dr. Aswani's August 2018 opinion, the outcome of his determination would have been different. *See Tirado*, 842 F.2d at 597 (in order for a court to require the consideration of additional evidence, the evidence must be "new" and not "merely cumulative of what is already in the record.").

Plaintiff also submitted, to the Appeals Council, a Skin Disorders Statement from Dr. Mary Lenahan, plaintiff's dermatologist. (Tr. 868-77) The Appeals Council considered Dr. Lenahan's opinion, but ultimately concluded that there was no reasonable probability that the opinion would have changed the outcome of the ALJ's decision. (Tr. 2) The Court agrees with the Appeals Council's assessment that Dr. Lenahan's opinion was not

material. Specifically, the opinion was not reasonably likely to have influenced the ALJ to decide plaintiff's disability application differently. Instead, Dr. Lenahan's opinion is consistent with the ALJ's finding that (1) plaintiff's skin condition does not meet the requirements of Medical Listing §8.03 and (2) her skin condition does not prevent her from engaging in substantial gainful activity. In fact, Dr. Lenahan expressly opined that plaintiff does not suffer from extensive skin lesions that continue to persist for at least three months despite continuing treatment. (Tr. 869) As to the approximate frequency and duration of flare-ups, Dr. Lenahan stated "not sure—don't see [patient] regularly." (*Id.* at 868) Consistent with the other treatment records relied on by the ALJ, Dr. Lenahan noted that plaintiff was resistant to using the topical steroid cream and antiperspirant as recommended. (Tr. 875) Further, Dr. Lenahan declined to opine as to plaintiff's specific functional limitations because she did not "see [plaintiff] regularly." (Tr. 868) Thus, there is no information contained in Dr. Lenahan's opinion which contradicts the ALJ determination or suggests that plaintiff is unable to perform work activity consistent with the RFC.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is granted.

The Clerk of the Court shall take all necessary steps to close the case.

**SO ORDERED.**

Dated:   March 24, 2021
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge